May it please the Court, my name is Erwin Schwartz, attorney for Mr. Gankmacher. The question posed before this Court is whether, when a subpoena issued under the Court's authority of 1782 in response to an Imlot request is challenged by the parties in interest, does the Court have discretion to enter a protective order, as it would with a grand jury subpoena, or a civil discovery subpoena, or a trial subpoena issued by the Department of Justice? Judge Robart's view was stated succinctly that he was without discretion. Quote, the Court concludes that under the Imlot, the Court does not have discretion to consider the intel and sealed-one factors. That, Your Honors, we believe is error. There are multiple paths under which requests for documents for a foreign proceeding or potential proceeding come into the District Court courthouse. They may come on an application from a foreign tribunal in a criminal case or a civil case. They may come on application from a foreign prosecutor, either during an investigation or in connection with a trial. They may come from foreign tribunals or quasi-tribunals in connection with civil or administrative proceedings. They may come from private litigants. Counsel, when we are looking at the intention of the treaty, what words in the treaty do you look to that grant discretion? Or are you simply arguing that Section 1782 is more than procedural? It has to carry everything with it. I'm trying to parse your argument. Are you arguing that the treaty grants discretion in and of itself, or are you acknowledging that the treaty's language doesn't grant discretion, but we have to read it in through 1782? My argument, Your Honor, is two prongs. Number one, the meaning of Section 1782 is construed by the Supreme Court in the Intel Corporation VAMD case. And two, the specific language in the treaty at Article 7, Paragraph 3, that reads, Requests shall be executed in accordance with the laws of the requested party, except if this treaty provides otherwise. The law under which treaty or letters of regulatory requests are executed is 1782. So unless the treaty says Can you just tell me which section again of the treaty? That was Article 7, Paragraph 3, Your Honor. Thank you. So unless the treaty has specific language that says the ordinary law of the United States under which it would be executed is superseded by something specific in the treaty, then the court acts under 1782. But you're reading that this section of the treaty is bringing in substantive standards as well as procedural mechanisms. In other words, if there were no domestic law that allowed enforcement of subpoenas, it just wasn't possible, you'd have a different kind of problem. So at a minimum, it's saying go forth and use the procedures supplied by domestic law. And I guess the harder question for me is whether that means just go follow those procedures or whether it also somehow incorporates standards of domestic law. And the reason that seems problematic to me is you have what's otherwise a bilateral treaty and you have different standards than in the two countries potentially for processing otherwise completely identical requests. And I wonder whether that, in your view, comports with the intention of the signatory parties. Let me give the Court a couple of specific examples from the treaty which I think illustrate our position. The treaty provides that all of the, as the requested party, American common law privileges apply in an in-lot request by the Russian government. Now, that clearly becomes substantive law rather than simply a vehicle so that if this is- But it is specified in so many words in the treaty. The privileges issue is specified. Yes, but it doesn't say what the privilege is or how the privilege should be interpreted and construed, which historically is a matter for the exercise of the district court's discretion. So, for example, if Mrs. Gauntmacher had been subpoenaed to give testimony and asserted that she could decline to give testimony based upon the marital privilege, the district court would have to make a determination and the means of making that determination and the substantive standards that would come in would come in through 1782. The court in executing the request has to derive its authority for execution and even the technical memorandum says that requests shall be executed through 1782. Wouldn't the district court have sort of its own inherent authority to issue subpoenas or to do these matters to accomplish the procedural mechanisms? I don't think- Even if 1782 didn't exist? I don't- Wouldn't there be other mechanisms under the Federal Rules of Civil Procedure to obtain the same kind of procedural devices? I haven't been able to identify one, Your Honor. I mean, when the court issues process- So is it your position that without 1782 the treaty would be unenforceable? Yes, Your Honor. In fact, the treaty- The treaty was self-executing. Well, the treaty is self-executing in the sense that the technical memorandum and the transmittal by the President to the Congress says no other legislation is needed because we are using 1782 as the vehicle through which these requests shall be executed. But the court has to have a statutory or a rule handle in which to process these. I want to ask you what you make of Article 7, Paragraph 3, the final sentence, which says, Except if prohibited by its laws, the requested party shall follow procedures specified in the request. And when I read that paragraph as a whole, it suggests to me that the intention is to require the requested party to do what is requested unless it is prohibited from doing so, which is quite a bit of a different standard than just, Oh, go ahead and exercise your 1782 discretion. That's really not what prohibited means to me. Your Honor, I believe that section refers to the later article in which they discuss the manner in which evidence should be processed. The technical memorandum is a specific example of the acquisition of DNA evidence. So you think that's irrelevant to our analysis as to whether the treaty intends to grant discretion? Yes, Your Honor. I believe that is directed to the question of evidence handling, that you should handle the evidence in this manner unless your law prohibits it. Well, that sort of brings me back to Judge Graber's first question, and I'm not sure I understood your answer, so I'd like to ask it again. Are you saying that section 3 of article 7 applies to procedures only, or is it a substantive matter also? In accordance with the laws, are we talking solely about procedural matters? No, Your Honor. It doesn't say just procedural matters. And I would ask the Court to consider this context. But it talks about executed in accordance with the laws, not considered in accordance with the laws, and there seems to be a difference. Requests shall be executed. And how do you go about doing that in accordance with your own procedures and laws is how I would read that sentence most naturally. It would seem to me, Your Honor, that the government gets through the courthouse door by having a treaty request. It then asks the Court to take action. The Court's action is based under 1782. That gives the Court the ability to issue process, to appoint a commissioner, to authorize the execution of a search warrant for the benefit of the foreign sovereign. That much seems to be near automatic. But the treaty and the case law under 1782 contemplate the parties in interest being able to challenge the demands of the foreign tribunal. And the only context in which that can be heard is within 1782. And again, I think that takes us back to what the Supreme Court noted in Intel. I would point out to the Court that the earliest of the Imlots came into effect in 1973, and that was the US-Swiss Treaty. 1782 was amended in 1964, and again in 1996. The Supreme Court in the Intel decision noted that the scope of the Court's authority under 1782 had been broadened both in 1964 and 1996, and said that if Congress intended to reduce the Court's discretion in any way, Congress would have given effect to that in one or the other of the amendments. Now, by the time of the 1996 amendments, there were multiple mutual legal assistance treaties, and they had been on the books for over 25 years. In the 1996 statute change, the only change was to say, and this is available for foreign criminal proceedings before charges are filed. Counsel, before you run out of time, even the extra time, I'd like to focus you on the other part of the case. And I want you to assume for the purpose of this question that we don't see discretion in the treaty itself. You also have constitutional arguments about what limits or what prohibitions American law would have to carrying out these subpoenas. Would you, in a nutshell, tell me exactly what your constitutional arguments are? What are the constitutional limitations, assuming that the treaty otherwise does not grant generic discretion? Your Honor, it is our view that when the authority of an American court is invoked by any party, the rights of due process as we know them are implicated. What does that mean specifically? Let me give you an example about why it bothers me to just have a generic comment like that. Let's suppose that the request comes from Ireland, and Ireland is in one of the phases where it isn't granting jury trials, but they need some records to prosecute somebody. Would a court be able to say, well, here we always have jury trials, and there you're not going to get a jury trial, so I think that's a violation of due process. I'm not sending the records. Is that what you mean, that we incorporate everything? Do you mean something narrower, and if so, what? I'm thinking more narrowly than that, Your Honor. The one that comes to my mind is there is an Imlot Treaty with Malaysia. Malaysia has been excoriated by the U.S. Department of State for its lack of fairness in the way it processes criminal cases. Where the United States government is aware that the material that it's going to turn over to a regime of that nature for proceedings that falls so far short of our notions of the minimum of fair process, whether it's a civil law country or a common law country, I think is irrelevant. But where you can look at it and say the record bespeaks that this falls so far short that the U.S. Constitution precludes our courts from being accessories to that. Well, that sounds very close to what the district court said when it said I'm applying a standard that shocks the conscience. If it shocks my conscience, if it is so far short of the most minimum basic protections, if you're going to be held in a place where you're tortured, and I know that, I'm not going to be party to that. That's the sort of thing that the judge was talking about. Is that essentially what you're asking us to apply? No, Your Honor. Again, I come back to the formulation that the Supreme Court gave us in Intel versus AMD, which gives the court discretion. Ah, so you would import Intel discretion as a constitutional requirement? That's what you mean? But I think when the Supreme Court says to consider. No, that's a yes or no question. Do you think that is the constitutional minimum due process requirement, what Intel did as a matter of statutory interpretation? I think the inquiry is that of Intel, and the standard has to be whether there is sufficient demonstration of a lack of fairness to require the court to inquire further. Those are great words, but I don't know what they mean or how we would possibly apply. It's a nonstandard. I don't understand exactly. You've agreed with me that we don't just import our whole Constitution so that, for example, just the absence of a jury trial alone probably wouldn't be enough to shock the conscience or create a due process violation or whatever. But something much worse is, how do we know what that much worse is, and why is it different than what the district court did here? You might also ask, well, how do you know what shocks the conscience? That district judge's conscience wasn't shocked, but how do we determine what shocks the conscience? And is it really the job of the court to determine? When you talk about Malaysia, for instance, isn't that the job of the executive branch to determine whether the system in the other country is such as is one that we are not willing to recognize? What is the division of authority between the courts and the executive branch in a case like this? And again, Your Honor, I would say the Supreme Court has indicated that it is within the U.S. Court's purview to make such judgments when it said it should consider the nature of both the tribunal and the proceedings. Does the executive have discretion under this treaty to reject a request or to impose conditions on the request? Yes, it does. It is clear that the executive branch, for a variety of interests, including finding that the request is contrary to American interests, may decline. That question works both ways. Is it the function of the executive branch to make those decisions? And if it then comes to the court for something, can it then say, you may not make those decisions? No. Can it say constitutionally, you are limited to doing what we tell you to do and you may not use your discretion in any way? Is that constitutional for the executive branch? I think it's a two-part analysis, Your Honor. The executive has its judgments to make, and the technical analysis points out that most requests will never come before the court. They are strictly executive branch responses to requests from other countries. But where the government cannot execute it alone and must come to the court and say we require judicial assistance, that it cannot say to the court under our system of checks and balances that the court may ask no questions, the court may play no role, the court need only sign the papers of the presumption. But it could easily say, couldn't Congress easily say, that the only limitation on your ability to deny this request is the bare bones limitation of the Constitution? It doesn't have to grant any greater discretion than that, does it? It could. The question is. Whether it has. It has. And as the Supreme Court again pointed out in intel, if Congress wanted to narrow the court's role. Judge Graber was trying to ask about the second subject, which is what could it do constitutionally. And I honestly, Judge, I can't tell you how that statute might be written. Well, by saying that you don't have, by saying you don't have discretion to deny this as a matter of statute. In other words, a statute that says, you shall give this information when requested, carries with it only the potential for a constitutional limitation. It contains no other limitation. Yeah, I would view that, Your Honor, as a congressional limitation on the jurisdiction of the court. And we certainly have seen that over the years from Congress, where it has divested the U.S. courts of the ability to examine certain things or undertake certain sorts of orders. Yes, Congress has done it and can do it. It's a little different saying you may not consider this case from saying you must consider this case and here is what you must do. The only statute, Your Honor, that I'm aware of in which Congress has done that is in the immunity statute, 18 U.S.C. 6002. Well, it's stated in the AEDPA, too. It says here's how you may consider habeas cases. Here are the standards to apply. That is true. I mean, there are other examples out there, too, of Congress saying, we want you to apply this standard when you look at this kind of a case. Yes, and as we saw in the other case. Again, that's the same thing. You have to apply a standard as to say you must issue an order. The habeas case prevents the court from doing a lot of things and it prevents you from making a decision. It says if the state courts violate the Constitution, that's fine, unless you happen to find a judge who didn't understand anything. Then it's not fine. But it doesn't say to you you must issue an order doing something. And that's why I said to me, Your Honor, it seems to be more a matter of jurisdiction. Congress is better able to preclude jurisdiction than it is to require particular action by the third branch. As I say, the only one I'm aware of is, I mean, I'm but a criminal practitioner, so. Let me just ask one final question to be sure I understand your argument. If the statute clearly said, the treaty and the statute clearly said, this statute grants you no discretion. When you get a request, you must grant it, unless it's prohibited by the constitutional limitation of due process. Is that okay as long as there is that check at the end that if the request violates due process, the court has the opportunity to decline? I'm not sure, Your Honor. I'm not sure if that would violate the definition of powers where the executive branch and Congress says you must do this upon request of the executive branch. Even though the Supreme Court has reminded us that the foreign affairs power is not ours to mess with? The foreign affairs power agreed is not the judiciary's, but the judiciary's power does not belong to the executive or to the Congress. And I think that would pose a very interesting separation of powers issue. Again, I think Congress may establish standards, may create jurisdiction, may deny jurisdiction. If the executive branch could issue these subpoenas by itself, and then the courts tried to interfere, it would be we would be reminded again that the executive branch has this power to do it. And what bothers me, and I'm sure there's an answer somewhere if we can find it, what bothers me is the difference between the executive branch saying we're going to issue subpoenas or we're going to do this within our foreign affairs power, and you can't interfere with it, and telling the courts here is what you have to do without examining anything. See, if, as the technical memo says, most of it is done without ever involving the courts. For example, Russia says we'd like an FBI agent to interview 17 people and tell us what they have to say. They're not involving the court. 1782, the Constitution may not even come into play. Could a litigant come before the court and ask to enjoin them? I'm not sure. Is there some reason that the executive branch couldn't issue the subpoenas itself, other than that there's no statute? I mean, we have administrative agencies that issue subpoenas. It's not only the courts that issue subpoenas. Do you know of any reason the executive branch couldn't issue these subpoenas? Your Honor, I believe Congress could write a statute that would pass muster in which, for the purposes of processing MLOT requests, it was all done within the executive branch and without a role for the court being created at all. Now, whether if they did that we would see litigation similar to what we saw out of Guantanamo, where people say there must be a forum in which to challenge executive branch actions, I don't know. But I think the statute could be written to put the authority in the executive branch without the judiciary. But after now almost three decades of MLOT experience, Congress has left us nothing but 1782, and even amending it in 1996 made no effort to restrict or curtail the discretion that courts have enjoyed and applied in foreign requests going back 150 years when that statute first came onto the books. Okay. Thank you. We'll try to give you a minute or two for rebuttal. May it please the Court. My name is Jim Osterly, and I represent the United States in this matter. The government suggests there are two independent bases that the court can rely on without even reaching the substantive arguments that have just been presented through opposing counsel. One is finality, and the second is mootness. As to finality, under the Supreme Court's doctrine in Ryan, when matter arises under a discovery dispute, the party to whom the request is submitted to must refuse to comply with that order and then suffer contempt before that matter is appealable. That situation occurred in this case. The subpoena, in this case the commissioner's subpoena, was submitted to Global. Rather than denying compliance and refusing compliance, they ultimately conceded and submitted the documents to the government for transmission to the Russian Federation. They did not suffer contempt. Under the Supreme Court's doctrine in Ryan, this Court now lacks jurisdiction to consider this appeal. Because you're saying at this point it would be purely advisory in your view? That's right, Your Honor. Because there seemed to be some dispute in the briefing as to whether all of the documents, in fact, have been produced. And I know that the materials are under seal, so my question is sort of generic. Is it your view that all documents required to be produced have been produced? Well, I only need to turn to the representations made by the appellants in this case. At page 5 of their opening brief in footnote 1, they acknowledge that all responsive documents were submitted pursuant to a grand jury subpoena, a grand jury subpoena that was identical to the commissioner's subpoena. So the government is left with no question that all documents were produced. So you're not quarreling with that? You're not arguing with them over the grand jury issue as to whether all documents were submitted or not? There's not some other proceeding in which you are demanding that more documents be produced because they haven't complied? No, Your Honor. There is no motion to compel outstanding and non-contemplated by the government. And you haven't made any demands upon them? No, Your Honor, we have not. We took them at their word. I thought there were some other subpoenas that were outstanding. There are subpoenas for deposition. There are no document subpoenas outstanding. There are deposition requests to interview individuals that were outstanding, but due to issues regarding immunity, those have not been acted upon. But I don't believe they were subpoenas. Did you get a subpoena to have them attend a deposition? Yes. Initial subpoenas were issued. That was some time ago. Again, issues of immunity arose, and those have been effectively stayed pending resolution of those issues of immunity. But those, I submit, Your Honor, are for another day. That's not the dispute before this Court. This dispute is over water. This is the document dispute. This is the document dispute, not the deposition dispute. And that really goes to the mootness issue, not finality. Well, okay, but on the mootness point, I guess, one of the arguments that opposing counsel makes is, well, you can send the documents back, so there could be some effective relief even though we've already complied. What is your response to that argument? That is the rule under the Supreme Court's holding in the Church of Scientology, but procedurally we're in a different posture here, Your Honor. Procedurally, we are in a foreign ñ we're dealing with an MLAB proceeding here. We're dealing with a treaty. It's not meaningful relief if this Court cannot order it. And addressing some of the final points made by opposing counsel raised ñ Wait, wait, wait. Where does that ñ tease that out for me. So it's because the documents have gone to the Russian Federation and we can't order the Russian Federation to do anything? Is that ñ That's correct. The finding in the Church of Scientology case was based on the fact that this court or any court could order the IRS to return documents. The distinction is, in this case, the appellants cannot seek that review because the treaty does not give them the standing to do that. But if this court were, for example, to order the Department of Justice to seek return of those documents, that would raise separation of powers concerns. The executive as the holder of that treaty and the responsible for the international obligations created by that treaty is the entity to seek the return of those documents. Now, I don't pretend to know what the Department of Justice would respond to if the court were to order that, but I don't believe under separation of powers doctrines that that's an appropriate request to be made by this court. It's solely within the executive to decide how to exercise rights to their rights under that treaty. Well, that might be, but it's not moot if there is a remedy. And simply because the remedy is in the hands of the executive branch, which is a party here, and it chooses not to exercise it, which it has not done. I mean, as far as we know, there's a remedy. And if the executive branch wanted to go to the Russian government, they could get their documents back. The point is, Your Honor, that The executive branch says, well, we don't want to do it. That raises another legal question. The point I'm trying to make, Your Honor, is if there's a remedy, a meaningful remedy, that meaningful remedy has to be a remedy that this court can enforce. And my point is that it falls exclusively within the executive to exercise a treaty right, the treaty right being that they can request of the requesting party on the MLAT for the return of the documents. That's the distinction I'm making here. I want to go back to your first point, that in your view, this is non-final, because there was no contempt. And if it is non-final, will there be, in your view, come a time when it is final and can be reviewed by this court? And if so, when would that be? In the circumstances before the court, not only if they had refused to produce those documents and there were a finding of contempt that could be reviewed by the court, that's when the court could review that determination. Then the question, then we slide into the third issue, or the first issue raised by the appellants, which is what is the standard or what is the discretion of the courts to apply? So in a sense, it's almost a form of waiver. If you're going to complain about a request for documents, you can't just give up the documents anyway and still complain about it. You have to make a real issue by saying, no, I won't give you the documents, and then there's. . . Then there's a judicial issue before the court. In this case, had the appellants not produced the documents, not complied with Judge Robart's order and directive to produce those documents, then there would be a controversy for this court to consider. But having produced those documents, they can't avail themselves of the Church of Scientology decision of the Supreme Court because there is no meaningful way to return those documents through this court and the judicial process. It's a treaty process to be exercised solely by the executive in this case. Is the finality rule that we recognized in In Re Letters Orgatory from Tokyo, is that a procedural rule or a substantive rule? The finality in that case, I believe what was being appealed was a denial of the ability to turn over the documents. And in that case, there was no contempt finding necessary. It was the government that was seeking the ability to turn over those documents. So it was final as to that issue. It was not the situation in this case. What's in this case was the party from whom the documents are being sought produced them. It was within their power and ability to hold them and suffer the contempt finding. Well, I guess it seems to me that we have two very inconsistent lines of cases in this area. We have the cases that you're talking about that require contempt, but then we have this other line of cases that say that rules under 1782 are final and appealable. And I don't think any court yet has really explained how those two concepts live side by side because they seem, at least to me, quite inconsistent. But when we're faced with two inconsistent lines of cases, should we not apply the more specific over the general to use a term of statutory construction and look to the 1782 cases which at least procedurally this has been denominated? With all due respect, I would suggest to the court there's not an inconsistency. I think if you look at the procedural status of those cases, there is not an inconsistency. There are some unsupported statements that orders issued under 1782 are appealable and final. Well, they may be unsupported, but they seem like holdings to me. I don't deny they are holdings, Your Honor. If you look at the procedural facts, they're easily distinguished from this case. And there is a case, and I submitted it just this morning. It's the Hogsland, Norway case in which this court did find, did apply the finality rule articulated by the Supreme Court in Ryan. In Hogsland's case, the appellant was named in a paternity suit in Norway, and this, again, is under 1782. The letters rogatory were issued requesting the appellant's deposition. The appellant moved for a protective order to stay the taking of the deposition. Citing Supreme Court decisions in Alexander and Kobeldich, this court concluded that the district court order denying a protective order was not final, not reviewable, because the appellant had not suffered contempt. That's 1782. That decision was later upheld in a second case out of this circuit, considering a request under 1782, and that was in re-request for judicial assistance from the Seoul District Criminal Court. Now, in that case, the court in Seoul was asking for certain bank documents, including those of the appellant. The appellant challenged the district court order directing the production of the documents. The government did not dispute the appealability of the order, but the court took it upon themselves to consider that question and concluded that it was final and appealable under the Pearlman Doctrine, the Pearlman Doctrine finding that where the request is submitted to a third party, we don't require that third party to suffer contempt because they're not motivated. They're not a party to the proceedings, so they don't have an interest. That's the Pearlman Doctrine. That's not what we have here, and that's what the court in Seoul said. Hogsland still stands. Where that 1782 request is submitted to a party to a proceeding, they have a stake in the game. They're not going to suffer contempt. We're going to force them to suffer contempt before we find that the order is final and appealable. So there is Ninth Circuit authority that is consistent with the determination that some of the courts I think you may want to talk about some of the more basic issues. It doesn't mean that this isn't serious, but we've spent 12 out of the 20 on this. I think Judge Graber had it correct. 1782 was not imported wholesale into the treaty, and I would rely on the same language that Judge Graber cited in Article 7, Paragraph 3 of the MLAT. Well, let's assume that the treaty gives no discretion as a matter of treaty-slash-statute. It says if you get a request that's proper in form and there's no claim of privilege, then you're supposed to issue the subpoena. Is there not a limitation on that that if the request would otherwise violate the Constitution, if it is prohibited by the Constitution, then there is that much of a limitation even under the most generous reading of the treaty and statute? I think that would be appropriate. There was no constitutional issue raised in this case. The suggestion that there are constitutional rights that attach to a foreign proceeding, in this case the Russian Federation owes some constitutional protections to Mr. Ganttmacher. No, that's not really the claim. The claim is that a United States court should not issue an order to someone that would knowingly subject them to an unconstitutional, some minimally unconstitutional procedure. In other words, let's suppose the worst case, one of these letters comes in and the person to whom it is addressed as a subpoena says, well, if I am prosecuted in this other country, they will torture me and kill me without ever giving me a trial at all. And it's uncontroverted evidence that that's how things work in that country. What is a U.S. court to do? Do we say that's an executive branch decision that's already been made or do we say we won't be parties to killing somebody or having them tortured? That's why I'm giving you the worst case scenario. It's a lot more subtle when what they say is, well, they don't give enough protections and they have lousy food in their prisons and, you know, a lot less horrible than the example I've given you. But is there some due process limitation there? To be exercised by the courts? Yes. Because I would suggest in the first instance that would be the role of the executive in considering the request at the first place when it comes to the door. The executive has that authority and would exercise it under the treaty because it has that ability to do that. If it were to pass through the first level and get down to a situation where the court is invoked for process purposes to fulfill that request. To fulfill it unless it's prohibited by law and our law includes the Constitution. Correct. I don't know what that standard is. I don't know what that minimal level is. It's not been articulated by any court. Well, the district court here talked about shocks to conscience. It first said under the treaty I don't have discretion, but implicitly invoking a due process concept says if it shocks the conscience I won't do it, but it isn't that bad, what I've been told about the Russian Federation. Is that a workable standard? Is that an appropriate standard? Is there some other standard? I can't offer a standard. I don't know that it's workable. It's never been applied. I think what the treaty does in this case is, and the commentators have noted, the treaties have planted in large respect letters rogatory. It introduces an obligatory process. There is no guidance as to what that standard might be. The appellants themselves can't articulate what it is. They don't necessarily agree with shocks to conscience, but don't offer the court with any alternative. It strikes me that there should be some constitutional minimum floor, but I don't know what that is. Adopting the ---- Could I ask you the same question? Could Congress give the Justice Department the authority to issue these orders? Congress did under the letters rogatory process under 1782. That was the predecessor process used before MLATS became in force. So Congress did give the executive some of that authority through 1782. Why is it that Congress should ask the courts to do this but not use discretion? I mean, what's the purpose of involving the courts in this process if the courts are only required to act automatically? The court is introduced in the process because the treaty, the United States has elected to use 1782 process to implement a treaty request. So the courts are being used as a vehicle to facilitate that process. There would be no purpose for the treaty if we were to have the same standard under 1782 applied to the treaty. The time, effort expended to negotiate that treaty would be meaningless. It would turn its head that if we were now to require the same discretion for a treaty obligation. Treaties were passed for reciprocity, as Judge Graber alluded to. If we were to make a request to the Russian Federation and they were to apply their own notions of fairness and propriety, we would find that unacceptable under the treaty. That was negotiated and signed by the President and ratified by the Senate. So we expect reciprocity. We expect a streamlined process. We don't always get it. I think we just found out this week. Sometimes courts apply their own standards and refuse to issue what one country might think is a violation of the treaty. That's a matter between the two executive branches when that happens. I just have a little trouble with the idea that the executive branch could do this itself but asks the court to do it as a mechanical instrument. It seems a little troublesome that the courts can be used in that manner and stripped of all discretion. That's the purpose of the treaty process and that's the process undertaken by the executive in this case. And it's contemplated, and in reference to the technical comments to the treaty, it's spelled out that 1782 is to be used as a procedural vehicle to implement a treaty request, a treaty request that has been negotiated with this foreign sovereign. It does further the goals of the process, which is reciprocity, some sense of finality, and a streamlining of the process. So we don't have this review in every instance. There are 64 MLET agreements to which the United States is a party. Adopting the view advocated by the appellants in this case would potentially turn every one of the MLET proceedings undertaken or requests under those 64 treaties into a comparative analysis of the justice system in each of those 64 countries with those of our own. And the district court would be asked to assess whether our domestic notions of propriety, fairness, and justice are sufficiently met. I'm not sure how, you know, these one argument sort of slides into the other. You did say, I thought a minute ago, Judge Graber, that yes, there is some constitutional limitation. It's just that I have difficulty articulating the test. She suggested that the district court employed a test called shocks of conscience, which certainly was a test a little while ago for at least the criminal police violations practices, whether that should be the test here or not. And you said you would have trouble determining what I assume is some version of due process, substantive due process, and not much beloved concept in the courts, but a useful concept under the Constitution. You'd have trouble defining it. But you said there must be some kind of minimal standard. And now you seem to be saying, well, no, there is no standard at all for the court to apply under the Constitution. I'm suggesting that in terms of a working solution, I don't know what that would be. I do know that we need to give effect to the treaty. And as I suggested a minute ago in more of a policy argument, to turn each district court into that sort of loose on that sort of process that was not contemplated by the treaty. Well, it's also possible that there could be a problem with one individual subpoena, even when there's not a problem generically with the requested country. I'm sorry. Well, let's go back to the example that I was giving before about somebody who can prove that they would be tortured and killed, and maybe the country rarely does that or almost never does it, but they're going to do it to this person. So that might be an individual consideration. It wouldn't require a generic look at the nature of the other country's system. Well, again, I think the first cut is the way the treaty is designed to be implemented is through the executive. And the treaty allows for those types of requests to be refused. The executive has to first return to the requesting party and said, we're not going to fulfill this request because it doesn't meet with our sense of fairness and justice. And we as the executive, as the party to this contract, with you, the foreign sovereign, will not honor that request. You know, sometimes the executive doesn't always view the Constitution in the same way the courts do. But I understand the argument that this is a decision, whether to grant something in compliance with the treaty that the executive can say no. And that's clearly appropriate. The question is whether it's appropriate then to say that if an executive, if the executive branch says, well, you know, we have bigger fish to fry than to worry about whether they're going to execute this one woman by stoning her to death, even though they usually don't do it generally, but they do want to stone this woman to death because she committed adultery with two or three people and we have to make an example of her. The executive may think that for some reason it's willing to overlook that. And I think Ted Graber's question was, is that something that we could consider, even though that's not their general practice? And I think your answer is no. I think my answer was there's a minimal standard. I don't know what it is. It's not present here. We would agree with Judge Robart, obviously, that there was insufficient evidence to meet his standard. We're not willing necessarily to accept his standard, as are the appellants. I don't suggest what it is. But I understand the question and the dilemma posed. Unless there are no further questions, I will conclude. Thank you very much. Well, although you're over, we'll give you two more minutes. I'd just like to address finality and mootness real briefly. On the issue of finality, In Re Sealed 1, as Your Honor pointed out, specifically says an order under 1782 is final and appealable. Similarly, in the Seoul, Korea case cited by Mr. Osterly, the real party in interest was permitted to take his appeal. That person is in the same position as Mr. Ganttmacher. The subpoena was directed to the corporation. And finally, in the letters of regatory from the Tokyo District Court, the people took an appeal from denial of the motion to quash. A stay was denied, and the court said in denying that stay that this order does not moot the appeal. There was no requirement in any of those cases of a contempt proceeding. On the issue of mootness, the corporation has advised the court that the subpoena has not been withdrawn, that it continues to review documents for production. The difficulty is that the documents library is all in a foreign language, and translation has taken a great deal of time. But it is not moot with regard to the continuing obligation of the corporation, and it is not moot insofar as the treaty provides for a mechanism of return. Prior to filing your brief here, did you advise the government that there are additional documents that may be disclosed? Your Honor, I was not counsel at the time the brief was filed. It is my understanding that it is contained in the brief and that a status report has been filed with the district court advising of that. But as I'm not counsel in the district court, I don't have access to it. Well, it matters. It could matter because it's easy to say, well, we view this subpoena as continuing and we're still rummaging in our warehouse. I mean, one can always say that. And, you know, I'm not challenging anyone's bad faith or good faith because I think everybody's acting in good faith here. But there's also to what's been briefed here is that everything to the corporation's knowledge that is related to what was subpoenaed has already been disclosed. Your Honor, I believe in the appellant's reply brief, you'll find what is stated is that the corporation is continuing to review documents, not that it has completed its process. No, I know it says that. I'm not sure that just saying that, that can't always be said in a case where documents have been subpoenaed, unless it's one thing. I want, you know, your letter from last July 13th. I'm just curious, I mean, is it that you identified a stack of documents in your warehouse that are in the Russian language that you need to go through to determine whether or not they comply with the subpoena, or is it that you're just continuing to look?  My understanding, Your Honor, and, again, I have to say my knowledge is not firsthand because I was not counsel in the district court for either of the appellants. My understanding is there is an identified volume of materials in the Russian language, and in order to determine responsiveness, someone is reviewing them in Russian, translating them in whole or in part into English so that the corporation's lawyers can make a judgment on whether they are responsive. Maybe we should be asking the corporation's lawyer this question. I shall. Good morning, Your Honors. Angelo Califone. I do represent Global Fishing. Could you answer Judge Paez's question specifically as to what's going on? Yes, Your Honor. Actually, I would reiterate what Mr. Schwartz just said. The only thing I would add to that is that these records were found in a computerized format, so there's been the additional issue of having to extract them from the computers and then put them in a format that can be read by an interpreter. It's an expensive process, but it's ongoing, and we have advised Mr. Osterling of this. The other thing I'd note, Your Honors, is there's been no effort to compel Global to respond either, so it's not as though we're doing this to keep the mootness issue alive. We're going through the normal process. We're applying a level of effort that the government has not complained about. So the issue is not moot because those subpoena requests remain outstanding, and there is more to produce. Thank you, Judge. Case just argued will be submitted. Thank you all for an interesting, useful argument. We very much appreciate it. Court will stand in recess for the day.
judges: Reinhardt, Graber, Paez